*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re ADAMS-LEE, Minors.

UNPUBLISHED
January 15, 2019

Nos. 344180; 344187
Wayne Circuit Court
Family Division
LC No. 17-001163-NA

Before: LETICA, P.J., and CAVANAGH and METER, JJ.

PER CURIAM.

In these child protective proceedings, the trial court terminated respondent-mother's parental rights to the minor children pursuant to MCL 712A.19b(3)(b)(*i*) (parent's act caused physical injury), (g) (failure to provide proper care and custody), (j) (reasonable likelihood of harm if returned to parent), and (k)(*iii*) (abuse of child involving battering, torture, or severe physical abuse) and terminated respondent-father's parental rights pursuant to MCL 712A.19b(3)(a)(*ii*) (desertion for more than 91 days), (b)(*ii*) (opportunity and failure to prevent physical injury), (g) (failure to provide proper care and custody), (j) (reasonable likelihood of harm if returned to parent), and (k)(*i*) (abuse of child involving abandonment). Both respondents appeal as of right.[1] We affirm.

## I. FACTS AND PROCEEDINGS

In the early morning hours of July 16, 2017, Detroit police officers were dispatched to respondent-mother's home in response to a report of a break-in. The officers found four of respondents' children—all under the age of four years old—in the living room, strapped in child car seats without padding. The children were scantily clothed and discovered sitting in their urine and feces. Respondents' fifth child, who was then nine months old, was found in an upstairs bedroom on the floor, partially under the bed. No adult was present. Respondent-

---

[1] We consolidated respondents' appeals to advance the efficient administration of the appellate process. *In re Adams-Lee Minors*, unpublished order of the Court of Appeals, entered June 21, 2018 (Docket Nos. 344180 and 344187).

mother had left the children alone in the house while she went to work. The home was squalid. The basement was flooded with sewage. Feces and trash were strewn throughout the house. A bathroom sink was blocked and partially full of dirty water. The children were transported to Children's Hospital, where they were admitted and treated for dehydration, malnutrition, failure to thrive, and skin injuries.

Petitioner filed a petition for jurisdiction over the children and requested termination of respondents' parental rights at the initial dispositional hearing. Respondent-father established his legal paternity to the five children for the first time after the proceedings began. Although petitioner did not offer reunification services, respondents voluntarily participated in services while proceedings were pending. Following a bench trial, the trial court asserted jurisdiction over the children. The court also found that the statutory grounds for termination were established by clear and convincing evidence and that termination of respondents' parental rights was in the children's best interests.

## II. DOCKET NO. 344180 (RESPONDENT-MOTHER)

Respondent-mother argues that the trial court erred in finding the existence of statutory grounds for termination. We disagree. In an action to terminate parental rights, the petitioner must prove by clear and convincing evidence that at least one statutory ground for termination in MCL 712A.19b(3) exists. *In re Trejo*, 462 Mich 341, 355; 612 NW2d 407 (2000). The trial court's decision is reviewed for clear error. MCR 3.977(K); *In re Trejo*, 462 Mich at 356-357. A finding is clearly erroneous when the reviewing court is left with the firm and definite conviction that a mistake was made. *In re JK*, 468 Mich 202, 209-210; 661 NW2d 216 (2003). "[T]his Court accords deference to the special opportunity of the trial court to judge the credibility of the witnesses." *In re Fried*, 266 Mich App 535, 541; 702 NW2d 192 (2005).

The trial court terminated respondent-mother's parental rights pursuant to MCL 712A.19b(3)(b)(*i*), (g), (j), and (k)(*iii*), which, at the time the court entered its order, permitted termination under the following circumstances:

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

(*i*) The parent's act caused the physical injury or physical or sexual abuse and the court finds that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home.

\* \* \*

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be

-2-

able to provide proper care and custody within a reasonable time considering the child's age.[2]

* * *

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

(k) The parent abused the child or a sibling of the child and the abuse included 1 or more of the following:[3]

* * *

(*iii*) Battering, torture, or other severe physical abuse.

Initially, we note that the trial court did not refer to MCL 712A.19b(3)(k)(*iii*) in its oral findings, but it identified that subdivision as a basis for termination in its written order. We must therefore presume that the trial court relied on subdivision (k)(*iii*) in terminating respondent-mother's parental rights. See *In re Contempt of Henry,* 282 Mich App 656, 678; 765 NW2d 44 (2009) ("[A] court speaks through its written orders and judgments, not through its oral pronouncements."). Although respondent-mother likewise neglected mention of this statutory ground in her appellate brief, to the extent that the trial court terminated respondent-mother's parental rights on this basis, it clearly erred by doing so. This case indisputably involved serious physical injuries suffered by the children as a result of respondent-mother's neglect, but the record contains no evidence that respondent-mother abused the minor children by way of "[b]attering, torture, or other severe physical abuse." To the contrary, two witnesses—including Dr. Elizabeth Holzworth, M.D., an expert in pediatric medicine, pediatric emergency medicine, and child abuse—explicitly testified that there was no evidence that the children had been physically abused. Nonetheless, the trial court's error was harmless because only one statutory

---

[2] Pursuant to 2018 PA 58, effective June 12, 2018, subdivision (g) has been amended to now provide:

The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

[3] As amended by 2018 PA 58, effective June 12, 2018, the introductory portion of subdivision (k) now provides:

The parent abused the child or a sibling of the child, the abuse included 1 or more of the following, and there is a reasonable likelihood that the child will be harmed if returned to the care of the parent . . . .

-3-

ground need be established to terminate parental rights, *In re Ellis*, 294 Mich App 30, 32; 817 NW2d 111 (2011), and the record fully supports termination pursuant to the remaining statutory grounds relied upon by the trial court.

Dr. Holzworth testified that the children suffered from mild to moderate dehydration and malnutrition. Four of the children were diagnosed with failure to thrive. The children also presented with skin injuries indicative of prolonged contact with a hard surface. Dr. Holzworth testified that these injuries were caused by adverse conditions over a period of several days, a week, or longer. The children's conditions led to the filing of criminal charges against respondent-mother, for which she pleaded guilty to fourth-degree child abuse, MCL 750.136b(7). This evidence supports the trial court's finding that respondent-mother caused the children to suffer physical injury and failed to provide proper care or custody. Respondent-mother also failed to provide proper care by repeatedly leaving the young children unsupervised overnight, in a house that was filthy with excrement, urine, and sewage. The children were also exposed to incidents of domestic violence between respondent-mother and respondent-father.

MCL 712A.19b(3)(b)(*i*), (g), and (j) also require proof of a likelihood that harm or improper care will recur. Specifically, subdivision (b)(*i*) requires "that there is a reasonable likelihood that the child will suffer from injury or abuse in the foreseeable future if placed in the parent's home"; subdivision (g) requires that "there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time"; and subdivision (j) requires that there be "a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent." Respondent-mother argues that the court's findings that injuries and neglect would likely recur are clearly erroneous because she voluntarily engaged in rehabilitative services and demonstrated parenting skills during supervised visitation. The trial court found, however, that her expressed intentions and efforts were not credible in view of the extreme neglect that had been ongoing when the children were discovered. This finding is not clearly erroneous. Respondent-mother admitted that she left the children alone on at least three or five occasions. However, the descriptions of the children's injuries and the condition of the house suggested that the home environment had been deteriorating over a longer period of time. Respondent-mother neglected the children to an egregious degree. The trial court did not clearly err by finding that respondent-mother's parental deficiencies were so severe that there was no reasonable expectation that they could be remedied within a reasonable time, notwithstanding her articulated acceptance of responsibility and her participation in voluntary services.

Respondent-mother maintains that her parental deficiencies were likely rooted in her traumatic background as a court ward whose own parents' parental rights were terminated when she was 14 years old. She suggests that the state failed in its responsibility to support her efforts at becoming an adequate parent. However, MCL 712A.19b(3)(g) provides that failure to provide proper care is grounds for termination without regard to the parent's intent. Similarly, subdivision (j) provides for termination where the court finds that the child is likely to be harmed "based on the conduct *or capacity*" of the parent. MCL 712A.19b(3)(j) (emphasis added). Accordingly, respondent-mother cannot avoid termination of her parental rights by attributing her deficiencies to past events. Respondent-mother repeatedly left five very young children alone at home for several hours. She failed to provide adequate food and fluids, failed to provide basic hygiene, and failed to maintain a minimally adequate home. Her method of "protecting"

the children was to restrain them in filthy unpadded car seats and to lay a mobile infant on her bed. These were not failures in complex parenting practices, but failures in meeting the children's most essential and obvious needs. Respondent-mother's background does not excuse exposing the children to the abusive conditions and risk of further extreme neglect.

Respondent-mother also argues that petitioner mistakenly determined that it was required to petition for permanent custody and contends that petitioner was instead required to provide reunification services. Respondent-mother did not preserve this issue by raising it in the trial court. See *In re TK*, 306 Mich App 698, 703; 859 NW2d 208 (2014) ("In general, issues that are raised, addressed, and decided by the trial court are preserved for appeal."). Issues concerning the application and interpretation of statutes are typically reviewed de novo, *In re Laster*, 303 Mich App 485, 487; 845 NW2d 540 (2013), but unpreserved issues are reviewed for plain error affecting substantial rights, *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008).

After a child has been removed from a parent's custody, petitioner is generally required to make reasonable efforts to reunify the child and the family. MCL 712A.19a(2). "The adequacy of the petitioner's efforts to provide services may bear on whether there is sufficient evidence to terminate a parent's rights." *In re Rood*, 483 Mich 73, 89; 763 NW2d 587 (2009) (opinion by CORRIGAN, J.). However, services are not required in every situation. See MCL 712A.18f(1)(b); *In re Plump*, 294 Mich App 270, 272; 817 NW2d 119 (2011). "Services need not be provided where reunification is not intended." *In re LE*, 278 Mich App 1, 21; 747 NW2d 883 (2008). "[T]he petitioner is not required to provide reunification services when termination of parental rights is the agency's goal." *In re Moss*, 301 Mich App 76, 91; 836 NW2d 182 (2013) (quotation marks and citation omitted).

Respondent-mother argues that this was not a case in which petitioner was mandated to seek termination of parental rights; therefore, the trial court was required to provide reunification services before considering termination of her parental rights. But MCL 722.638(3) clearly recognizes petitioner's discretion to petition for termination at the initial disposition "even though the facts of the child's case do not require" DHHS to file a mandatory termination petition. In other words, although petitioner was not mandated to seek termination, it was permitted to do so. Respondent-mother thus fails to demonstrate a plain error affecting her substantial rights arising from petitioner's decision to seek termination of her parental rights at the initial dispositional hearing.[4]

---

[4] MCL 722.638 provides:

> (1) The department shall submit a petition for authorization by the court under section 2(b) of chapter XIIA of 1939 PA 288, MCL 712A.2, if 1 or more of the following apply:

> (a) The department determines that a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home, has abused the child or a sibling of the child and the abuse included 1 or more of the following:

(*i*) Abandonment of a young child.

(*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

(*iii*) Battering, torture, or other severe physical abuse.

(*iv*) Loss or serious impairment of an organ or limb.

(*v*) Life threatening injury.

(*vi*) Murder or attempted murder.

(b) The department determines that there is risk of harm, child abuse, or child neglect to the child and either of the following is true:

(*i*) The parent's rights to another child were terminated as a result of proceedings under section 2(b) of chapter XIIA of 1939 PA 288, MCL 712A.2, or a similar law of another state and the parent has failed to rectify the conditions that led to the prior termination of parental rights.

(*ii*) The parent's rights to another child were voluntarily terminated following the initiation of proceedings under section 2(b) of chapter XIIA of 1939 PA 288, MCL 712A.2, or a similar law of another state, the parent has failed to rectify the conditions that led to the prior termination of parental rights, and the proceeding involved abuse that included 1 or more of the following:

(A) Abandonment of a young child.

(B) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

(C) Battering, torture, or other severe physical abuse.

(D) Loss or serious impairment of an organ or limb.

(E) Life-threatening injury.

(F) Murder or attempted murder.

(G) Voluntary manslaughter.

(H) Aiding and abetting, attempting to commit, conspiring to commit, or soliciting murder or voluntary manslaughter.

(2) In a petition submitted as required by subsection (1), if a parent is a suspected perpetrator or is suspected of placing the child at an unreasonable risk of harm due to the parent's failure to take reasonable steps to intervene to eliminate that risk, the department shall include a request for termination of parental rights at the initial dispositional hearing as authorized under section 19b of chapter XIIA of 1939 PA 288, MCL 712A.19b.

(3) *If the department is considering petitioning for termination of parental rights at the initial dispositional* hearing as authorized under section 19b of

In support of her argument that services were required before termination of her parental rights, respondent-mother relies upon MCL 712A.19a(2), which provided the following at the time the trial court entered its order terminating respondent-mother's parental rights:

The court shall conduct a permanency planning hearing within 30 days after there is a judicial determination that reasonable efforts to reunite the child and family are not required. Reasonable efforts to reunify the child and family must be made in all cases except if any of the following apply:

(a) There is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in section 18(1) and (2) of the child protection law, 1975 PA 238, MCL 722.638.

(b) The parent has been convicted of 1 or more of the following:

(*i*) Murder of another child of the parent.

(*ii*) Voluntary manslaughter of another child of the parent.

(*iii*) Aiding or abetting in the murder of another child of the parent or voluntary manslaughter of another child of the parent, the attempted murder of the child or another child of the parent, or the conspiracy or solicitation to commit the murder of the child or another child of the parent.

(*iv*) A felony assault that results in serious bodily injury to the child or another child of the parent.

(c) The parent has had rights to the child's siblings involuntarily terminated.[5]

(d) The parent is required by court order to register under the sex offenders registration act.

---

chapter XIIA of 1939 PA 288, MCL 712A.19b, *even though the facts of the child's case do not require departmental action under subsection (1)*, the department shall hold a conference among the appropriate agency personnel to agree upon the course of action. The department shall notify the attorney representing the child of the time and place of the conference, and the attorney may attend. If an agreement is not reached at this conference, the department director or the director's designee shall resolve the disagreement after consulting the attorneys representing both the department and the child. [Emphasis added.]

[5] MCL 712A.19a(2)(c) was amended by 2018 PA 58, effective June 12, 2018, to provide that reunification efforts need not be made where "[t]he parent has had rights to the child's siblings involuntarily terminated and the parent has failed to rectify the conditions that led to that termination of parental rights."

Respondent-mother's argument is unpersuasive because MCL 712A.19a pertains to permanency planning hearings and related procedures for children who have already been adjudicated temporary court wards and who have been placed in foster care. See MCL 712A.19a(1). Its requirements concerning provision of reunification services did not apply to respondent-mother's children who had not yet been adjudicated court wards, and who were the subjects of a petition to terminate parental rights at the initial disposition.

Respondent-mother lastly argues that the trial court erred in finding that termination of her parental rights was in the children's best interests. Once a statutory ground for termination is established, the trial court shall order termination of parental rights if it finds that termination is in the child's best interests. MCL 712A.19b(5). The trial court's best-interest decision is reviewed for clear error. *In re Trejo*, 462 Mich at 356-357.

These children were exposed to extreme neglect in respondent-mother's care. Respondent-mother admitted to leaving these five young children alone overnight at least three or five times, exposing them to a substantial risk of harm. Furthermore, even when respondent-mother was present with the children, she so dangerously neglected them that they suffered from dehydration, malnourishment, skin injuries, and developmental delays. The deplorable state of the home further indicated that respondent-mother could not provide minimally adequate care even when she was not working. Only a fortuitous report of a break-in led to law enforcement, medical, and social services involvement, extricating the children from these deplorable, life-threatening conditions. Additionally, respondent-mother admitted that her children had been present during incidents of domestic violence between her and respondent-father. The trial court did not clearly err by finding that termination of respondent-mother's parental rights was in the children's best interests.

### III. DOCKET NO. 344187 (RESPONDENT-FATHER)

Respondent-father argues that the trial court erred in finding the existence of statutory grounds for termination. In addition to relying on MCL 712A.19b(3)(g) and (j), the trial court found that termination of respondent-father's parental rights was also justified under MCL 712A.19b(3)(a)(*ii*), (b)(*ii*), and (k)(*i*), which, at the time the court entered its order, permitted termination under the following circumstances:

(a) The child has been deserted under either of the following circumstances:

\* \* \*

(*ii*) The child's parent has deserted the child for 91 or more days and has not sought custody of the child during that period.

(b) The child or a sibling of the child has suffered physical injury or physical or sexual abuse under 1 or more of the following circumstances:

\* \* \*

-8-

(*ii*) The parent who had the opportunity to prevent the physical injury or physical or sexual abuse failed to do so and the court finds that there is a reasonable likelihood that the child will suffer injury or abuse in the foreseeable future if placed in the parent's home.

\* \* \*

(k) The parent abused the child or a sibling of the child, the abuse included 1 or more of the following:

(*i*) Abandonment of a young child.

The evidence indicated that respondent-father took no active involvement in supporting or caring for the children, even when he knew they were not being adequately supervised or cared for in respondent-mother's custody. He testified that he saw the children less frequently after he moved to Flint and admitted that he did not see the children at all from March to July 2017. Although he blamed his absence on respondent-mother's refusal to permit visitation, he admitted that he never paid child support and he did not establish legal paternity before these proceedings began. He instead acquiesced to respondent-mother's alleged refusals of his requests to see the children. Rather than agreeing to a formal support arrangement, he simply accepted respondent-mother's rejections of his inquiries regarding the children's needs. Most significantly, he did not contact the police or Child Protective Services when he personally discovered that respondent-mother had left the young children alone, unsupervised. Instead, he made excuses for respondent-mother by stating that he came from a culture in which leaving children unsupervised for short time periods was acceptable. Respondent-father was content to leave the children to respondent-mother's inadequate care, without ensuring that she was capable of or able to provide proper care. Respondent-father's failure to actively involve himself in the children's lives and his resignation of the children to respondent-mother's care in such an obviously unfit environment justified termination under MCL 712A.19b(3)(a)(*ii*), (b)(ii), (g), (j), and (k)(*i*).

Although respondent-father does not specifically challenge petitioner's decision to seek termination at the initial dispositional hearing, he argues that he was not given sufficient time to work toward reunification. However, as already noted, petitioner has discretion to seek termination at the initial dispositional hearing when it deems that action appropriate, MCL 722.638(3), and reunification services are not required when termination of parental rights is petitioner's goal, *In re Moss*, 301 Mich App at 91. Given the extreme neglect involved here, we find no error in petitioner's decision to seek prompt termination or the trial court's findings regarding the existence of statutory grounds.

Further, the trial court did not clearly err by finding that termination of respondent-father's parental rights was in the children's best interests. Respondent-father's attention to the children during supervised visitation did not outweigh his history of abandoning them to respondent-mother's obviously inadequate care. Respondent-father was a passive parent for years in the period leading up to the police discovery in July 2017. The children are in need of

parents who will proactively protect them and provide for their needs. They were not required to wait for respondent-father to finally take an interest in and demonstrate his commitment to their care.

        Affirmed.


                                   /s/ Anica Letica
                                   /s/ Mark J. Cavanagh
                                   /s/ Patrick M. Meter